UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

JEFFREY MILLAR,

        Plaintiff,

    v.

THE LAKIN LAW FIRM PC,
LAKINCHAPMAN, LLC, and BRADLEY
M. LAKIN,

        Defendants.

Case No. 09-cv-101-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants The Lakin Law Firm PC, LakinChapman, LLC, and Bradley Lakin's (these parties will hereinafter be collectively referred to as "Defendants") Motion to Dismiss (Doc. 81) Count IV of the Amended Complaint (Doc. 77), alleging retaliatory discharge under the Employee Retirement Income Security Act. Plaintiff Jeffrey Millar has filed a Response (Doc. 94) in opposition to the motion, to which Defendants have filed a Reply (Doc. 96). For the following reasons, the Court **GRANTS** the instant motion.

## BACKGROUND

### I.  Facts

For purposes of a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). The Court, accepting all of Plaintiff Jeffrey Millar's (hereinafter "Millar") allegations as true and drawing all reasonable inferences in his favor, finds as follows:

Millar, an attorney licensed in the states of Illinois and Missouri, began working for Defendant Lakin Law Firm PC (hereinafter "Lakin Law") in May 2000. On or about January 20, 2004, Millar and Lakin Law entered into a written employment agreement drafted by Lakin Law and executed by its president, Defendant Bradley Lakin (hereinafter "Lakin"). The employment agreement provided that it covered the term "commencing as of January 1, 2004 and ending December 31, 2004 . . . and shall automatically renew annually for an additional twelve-month period unless either party hereunder provides the other party hereunder of written notice of termination at least 90 days prior to the applicable termination date." (Doc. 77, p. 3, ¶ 14). The employment agreement set forth Millar's base salary and provided for a class action bonus of 1 to 1.5 percent of the net fees "for those cases [Millar] has been personally assigned as the responsible attorney." *Id*. at ¶ 15. This bonus compensation was capped at $200,000 annually. Furthermore, in order to be entitled to the bonus compensation, Millar "must be employed with [Lakin Law] as of December 31st of each year in which [Lakin Law] received the fee." *Id*. The employment agreement specified Illinois law as the governing law.

In May 2006, a federal indictment was brought against Thomas Lakin, father of Defendant Lakin, on sex and drug charges. Lakin Law thereafter terminated the employment of Richard Burke, supervising attorney of Lakin Law's class action department, following Burke's recommendation that a plan be developed to protect the interests of the department's clients if Defendant Lakin or Lakin Law were indicted, sanctioned by the Illinois Bar, or were adversely impacted by the publicity surrounding the charges against Thomas Lakin. At that point, Millar assumed the duties of supervising attorney of Lakin Law's class action department. In November 2007, Lakin Law increased Millar's base compensation.

During the period of Millar's employment with Lakin Law, the firm offered a group health insurance plan in which Millar participated. In November 2007, Defendants switched the group health insurance provider from Aetna to United HealthCare, which offered reduced coverage. Millar's son has an extremely rare metabolic condition that requires him to take oral neurotransmitter precursor medications six times a day. The medication is expensive and difficult to obtain but necessary to prevent Millar's son from suffering brain damage or death. Defendants have been aware of Millar's son's condition since shortly after his birth in 2003. United HealthCare initially refused to cover Millar's son's medication. In February 2008, after Millar threatened litigation, United HealthCare began covering the medication, at considerable additional expense to the group health plan. Shortly thereafter, Defendants began to falsely accuse Millar of excessive absenteeism and faltering work performance.

On December 19, 2008, Lakin Law reorganized and renamed itself [Defendant] LakinChapman LLC (hereinafter "LakinChapman"). LakinChapman is a successor in interest to Lakin Law. Millar continued to fulfill the duties of supervising attorney of the class litigation department until December 29, 2008, when Defendants terminated his employment. Defendants did not provide Millar with the agreed-upon 90 days written notice prior to terminating his employment. Millar has not received his base compensation since December 29, 2008, nor has he received his full bonus compensation.

## II.     Relevant Procedural Posture

On February 4, 2009, Millar filed suit in this Court against Defendants, alleging claims of breach of contract, violation of the Illinois Wage Payment and Collection Act, 820 ILL. COMP. STAT. 115/1, *et seq.*, quantum meruit, and violation of 29 U.S.C. § 1140 of the Employee

3

Retirement Income Security Act of 1974 (hereinafter "ERISA").[1]  With respect to the ERISA claim, Millar alleges that Defendants wrongfully discharged him from his employment because he exercised his rights under the group health plan.  In his original Complaint (Doc. 3), Millar's ERISA claim sought damages for humiliation, emotional suffering, and damage to reputation, as well as punitive damages and attorneys' fees.

On June 23, 2009, the Court, *inter alia*, granted Defendants' Motion to Dismiss (Doc. 21) the ERISA claim because Millar failed to pray for relief allowed by the statute.  (*See* Doc. 36, p. 6) ("[T]he relief requested by Plaintiff [Millar] is in no way equitable in nature.").  However, the Court dismissed said claim without prejudice and granted Millar time to re-file the complaint with adequate relief under the ERISA count.  Millar ultimately re-filed his Amended Complaint (Doc. 77) on September 28, 2009, which not only amended the relief sought under ERISA but added one count of negligent spoliation of evidence and one count of fraud.

In its current incarnation, Millar's ERISA claim seeks reinstatement with back pay and/or front pay, restitution of forfeited employee benefits, and attorneys' fees.  Once more, in the instant motion to dismiss, Defendants argue that the applicable law disallows the relief requested by Millar.  Following a general overview of the relevant law and analysis of a preliminary issue presented by Millar, the Court will address the appropriateness of each remedy sought in kind.

## ANALYSIS

As aforementioned, Millar's ERISA claim is one for retaliatory discharge pursuant to 29 U.S.C. § 1140 (hereinafter "§ 510").  Section 510 provides, in relevant part,

---

[1] On January 26, 2009, Defendants filed a declaratory judgment action in the Circuit Court of St. Charles County, Missouri, seeking a declaration that Millar was an at-will employee, that no written employment contract existed, that Millar was discharged for cause, and that Lakin Law owes Millar no additional money or benefits.

> It shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or] this subchapter . . . , or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this subchapter . . . .

29 U.S.C. § 1140 (2006). The statute goes on to state that "[t]he provisions of section 1132 of this title [hereinafter "§ 502"] shall be applicable in the enforcement of this section." *Id*.

Section 502 chronicles those persons empowered to bring ERISA actions as well as available remedies thereunder.

The relevant portion of § 502 states as follows:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate *equitable relief* to redress such violations or to enforce any provisions of this subchapter or the terms of the plan.[2]

*Id*. § 1132(a)(3) (emphasis added). With respect to § 502(a)(3), the modifier "equitable" has been interpreted by numerous courts and serves as the central focus of the instant motion to dismiss. The Supreme Court, in *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), and *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), has rejected an expansive reading of the term "equitable relief." In essence, the Supreme Court has held that the statute does not permit *all* forms of relief; rather, § 502(a)(3) allows only those categories of relief typically available in equity. *Great-West*, 534 U.S. at 209-10 (citing *Mertens* 508 U.S. at 257-58).

---

[2]In order to make out a prima facie case under § 510, the Seventh Circuit Court of Appeals has held that the plaintiff must demonstrate that he "(1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate was present." *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir. 1996).

Subsequently, following a defendant's motion under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's failure to allege an appropriate equitable relief under ERISA may result in dismissal of claims arising thereunder. *See, e.g.*, *Health Cost Controls v. Skinner*, 44 F.3d 535, 537 (7th Cir. 1995) ("[T]he district court's reasoning [that plaintiff failed to properly allege equitable relief permitted under the statute] does not negate the existence of federal subject matter jurisdiction, but rather indicates that [plaintiff] may have failed to state a proper claim for relief under section 502(a)(3).").

**I.**     ***Great-West*'s Fiduciary-Beneficiary Distinction**

Before delving into much of the instant motion's substance, the Court must address a preliminary issue raised by Millar. Millar argues that the limitation on remedies under § 502(a)(3) applies only to actions by fiduciaries, not beneficiaries like himself. However, the precedent upon which Millar supports this proposition is mere dicta by the *Great-West* Court. More importantly, the Supreme Court's mention of a limit on the remedies available to fiduciaries was in the context of a comparison between the rights available under § 502(a)(3) and § 502(a)(1)(B).

Section 502(a)(1)(B) holds that "[a] civil action may be brought by participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B) (2006). By its very terms, § 502(a)(1)(B) only empowers participants and/or beneficiaries to bring such actions, not fiduciaries. Further, § 502(a)(1)(B) does not contain the same "equitable" modifier as § 502(a)(3); thus, a wider variety of relief is available to those invoking its terms. In other words, when Justice Scalia wrote that "Congress did not extend the same authorization to fiduciaries [to obtain non-equitable remedies under

6

ERISA]," he meant so in the context of § 502(a)(1)(B) actions for benefits. *Great-West*, 534 U.S. at 220-21.

Here, Millar's retaliatory discharge claim, which argues that he was fired for exercising his rights under the group health plan in insisting the plan cover his son's medication at considerable expense to Lakin Law and LakinChapman, is an action under § 502(a)(3)(B) by way of ERISA § 510, not an action for benefits under § 502(a)(1)(B) as such claims are understood. *See Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991) ("[The] substantive rights [available under § 510] can be enforced through civil actions brought pursuant to section 502 of ERISA, 29 U.S.C. § 1132.  Specifically, section 502(a)(3), 29 U.S.C. § 1132(a)(3) encompasses civil actions such as this one for violations of ERISA itself.").  This is supported by the fact that § 502(a)(3) serves as a "'catchall' provisio[n] that act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  Therefore, Millar's reliance on a beneficiary-fiduciary distinction is misplaced, and the remedies available to him, if any, will need to be equitable in nature.

## II.     ERISA Remedies at Issue

As aforementioned, the amended ERISA claim seeks the following remedies: reinstatement with back pay and/or front pay, restitution of forfeited employee benefits, and attorneys' fees.

### A.     Reinstatement

Generally, reinstatement to one's former position constitutes an equitable remedy. *See Lorillard v. Pons*, 434 U.S. 575, 583 n.11 (case involving the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"), wherein the Supreme Court noted that "judgments compelling

7

'employment, reinstatement or promotion' are equitable") (citations omitted); *see also Hildebrandt v. Ill. Dept. of Natural Res.*, 347 F.3d 1014, 1031 (7th Cir. 2003) (Title VII). However, reinstatement is not always an appropriate or feasible remedy, especially if it would promote hostility. *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1055 (7th Cir. 1990) (ADEA). "Reinstatement may become particularly infeasible if the plaintiff would no longer enjoy the confidence and respect of his superiors once reinstated." *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 862 (7th Cir. 2001) (Title VII). Likewise, "reinstatement may . . . be problematic when the plaintiff holds a management position . . . or would be supervised by the same individuals who discriminated against him in the first place . . . ." *Id.* (citations omitted).

In the instant case, the Court holds that reinstatement of Millar to his former employ would carry many of the concerns discussed by the *Hybert* and *Bruso* Courts.[3] First and foremost, Millar is an attorney who holds obligations of trust and confidence to his former and any current clients, as well as his employers. As a result of the fallout between the parties and the ongoing litigation, Millar's former employers no doubt lost some of this trust. Moreover, Millar was not a low or mid-level associate at Lakin Law or LakinChapman; rather, he was the supervisor of its entire class action department, which inherently came with a great deal of responsibility. And, of course, if reinstated, Millar would be directly supervised by Lakin, who allegedly discriminated against him in the first place.

---

[3] While, as indicated, *Hybert* and *Bruso* involved the ADEA and Title VII respectively, the Court sees no reason why feasibility analysis should not extend to reinstatement requested in an ERISA action as well. In fact, if feasibility analysis did not accompany an ERISA plaintiff's request for reinstatement, then a mere prayer for such relief would entirely circumvent the oft-disputed equitable remedy analysis.

The Court notes that the Amended Complaint (Doc. 77) further documents concerns as to reinstatement. In general, the majority of the complaint gives the Court a strong sense that animosity existed and continues to exist between Millar and Defendants. Specifically, Millar alleges that Defendants have engaged in "deceptive conduct and/or destroyed evidence to suit their needs" in this case and in other matters preceding this lawsuit. (Doc. 77, p. 4, ¶ 19). He further alleges that Defendants Lakin Law and Lakin "lost or destroyed Millar's employment contract in or about July 2006 [during Millar's employ]" (*Id*. at p. 15, ¶ 67). In considering the instant motion to dismiss, the Court must accept these and other factual allegations as true, which evidence a longstanding hostility between Millar and Defendants. Contrary to *Bruso*, the friction between Millar and Defendants appears to have existed long before this litigation, which points toward infeasibility of reinstatement. Accordingly, Millar cannot proceed on his request for reinstatement.

### 1. Back Pay

While the *Great-West* Court did not explicitly classify back pay as a remedy available under ERISA § 502(a)(3) claims, it did offer significant guidance on the issue. The Court first explained that "[a] claim for money due and owing under a contract is 'quintessentially an action at law.'" *Great-West*, 534 U.S. 204, 210 (2002) (quoting *Wal-Mart Stores, Inc. v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000)). The Court went further, explaining that lawsuits seeking payment of a sum of money are typically claims for money damages and thereby represent legal relief "since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id*. (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)). Indeed, "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity."

*Id.* at 210-11. *Great-West* even went so far as to state, in dicta, that Congress did not *specifically* characterize back pay as equitable relief under Title VII and, by implication, ERISA. *See Id.* at 218 n.4.

Here, given the entirety of the operative complaint, the back pay sought by Millar does not equate to equitable relief. In asking for back pay under ERISA, Millar hopes to recover the money or compensatory damages that he was owed under his employment contract with Defendants. This claim, taken alongside Millar's breach of contract and quantum meruit claims, fundamentally represents "a claim for money due and owing under a contract" as discussed in *Great-West*.[4] The Court simply fails to see how this prayer for money past-due can stand for equitable relief, especially since Millar's entire lawsuit centers around his employment contract with Defendants .

Additionally, the "possession test" and other relevant law relating to restitution sought under § 502(a)(3), discussed *infra* with respect to the prayer for forfeited employee benefits, applies to the Court's back pay analysis. Millar's request for back pay does not target specific identifiable funds or funds that can be particularly discerned. This is supported by the fact that the complaint does not request that a constructive trust or equitable lien be imposed by the Court.

Perhaps most importantly, the Court does not find Millar's arguments to be persuasive on the back pay issue. Millar first argues that *Great-West* applies strictly to fiduciaries and not beneficiaries, however, the Court addressed the problem with this argument *supra* and need not do so again here. Millar's alternative argument is that the Seventh Circuit has "repeatedly held"

---

[4]While *Great-West* notably did not involve a retaliatory discharge claim under § 510, the equitable remedy requirement applies to all claims involving § 502(a)(3), including § 510 lawsuits.

10

back pay as equitable in nature post-*Great-West*. (Doc. 94, p. 4). However, this assertion is tenuous at best, as none of the cases on which Millar premises this contention involved ERISA. If anything, the *Great-West* Court indicated that other statutes which draw a legal-equitable remedy distinction hold little bearing over ERISA. *See* 534 U.S. 218 n.4 ("Title VII has nothing to do with this [ERISA] case."). Lastly, Millar argues that his request for back pay is equitable because it is incidental or intertwined with a prayer for the traditionally equitable remedy of reinstatement. Of course, the Court has already found reinstatement to not be feasible in this case, and any relief premised on the viability of reinstatement would therefore fail.

Although the Seventh Circuit has yet to rule on back pay's status as a remedy under ERISA, the Court's holding is supported by at least three federal appellate courts. *See Zavala v. Trans-System, Inc.*, 258 F. App'x 155, 157-58 (9th Cir. 2007) (also holding that plaintiff's request for front pay constituted a legal remedy unavailable under § 502(a)(3)); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 655-56 (3d Cir. 2007)*; Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1260-61 (10th Cir. 2004). Several federal district courts have made a similar finding as well. *See, e.g., Hicks-Wagner v. Qwest, Inc.*, 462 F. Supp. 2d 1163, 1170-71 (D.N.M. 2006); *Michaelis v. Deluxe Fin. Servs., Inc.*, No. Civ.A. 05-2351-KHV, 2006 WL 27210, at *2-3 (D. Kan. Jan. 5, 2006).

    **2.**    **Front Pay**

Like back pay, neither the Supreme Court nor the Seventh Circuit has specifically addressed whether front pay constitutes an allowed equitable remedy under ERISA § 502(a)(3). *Fletcher v. ZLB Behring LLC*, No. 05 C 2695, 2006 WL 218164, at *6 (N.D. Ill. Jan. 27, 2006). However, much of the Court's analysis with respect to back pay can and will apply with equal force to its characterization of front pay as a legal remedy, at least to the extent that Millar seek

such relief.  This obviously places Millar on loose footing with the issue at the onset of the Court's analysis.

Moreover, the Court notes that, in requesting front pay, Millar hopes to collect payment for future unearned wages.  The compensatory nature of this relief is legal and is not incidental to any appropriate equitable relief.  The Court agrees with Defendants' characterization that Millar's front pay demand is a prayer for "pay for no work."  (Doc. 81, p. 10).  This is evidenced by the fact that, assuming *arguendo* that the Court were to award Millar front pay, any calculation of damages would necessarily be based off his employment contract with Defendants.  Therefore, any front pay in this case would not represent an equitable remedy.

The Court's ruling on this issue is supported by a number of district courts which have prohibited claims of front pay in ERISA cases post-*Great-West*.  *See, e.g.*, *Harris v. Finch, Pruyn & Co.*, No. 05-cv-951 (FJS/RFT), 2008 WL 4155638, at *8 (N.D.N.Y. Aug. 26, 2008); *Kollman v. Hewit Assocs., LLC*, No. Civ.A. 03-2944, 2005 WL 1941658, at *12 (E.D. Pa. Aug. 11, 2005); *Serpa v. SBC Telecomms., Inc.*, 318 F. Supp. 2d 865, 873-74 (N.D. Cal. 2004); *Kishter v. Principal Life Ins. Co.*, 186 F. Supp. 2d 438, 445-46 (S.D.N.Y. 2002); *but see De Pace v. Matsuhita Elec. Corp. of Am.*, 257 F. Supp. 2d. 543, 565-66 (E.D.N.Y. 2003).

### B. Restitution of Forfeited Employee Benefits

Whether restitution serves as an equitable remedy "depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought."  *Great-West*, 534 U.S. 204, 213 (2002) (quoting *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994)).  A claim for a legal remedy exists when a plaintiff cannot "assert title or right to possession of particular property, but . . . nevertheless . . . might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him[.]" *Id.* (quoting 1 D. Dobbs, Law of

Remedies § 4.2(1), at 571(2d ed. 1993)). Meanwhile, equitable relief, which typically bears the form of a constructive trust or equitable lien, exists "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id*. Put simply, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id*. at 214. Ultimately, the *Great-West* Court held that the remedy at issue was legal in nature and could not be recovered under ERISA, as "[t]he basis for petitioners' claim [was] not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners [were] contractually entitled to *some* funds for benefits they conferred." *Id*. (emphasis in original). Of course, a claim for money can be equitable, so long as the money sought includes "specifically identifiable funds." *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362-63 (2006) (quotations and citation omitted).

      Here, Millar is seeking "restitution of forfeited employee benefits" on his ERISA claim. Again, this request is premised on his employment contract with Defendants, which creates a presumption that a legal, not equitable, remedy exists. *See Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 806 (7th Cir. 2009) (citing *S.E.C. v. Lipson*, 278 F.3d 656, 663 (7th Cir. 2002) ("[Restitution] is a legal remedy when sought in a case at law (for example, a suit for breach of contract) and an equitable remedy when sought in an equity case . . . .")). This presumption is supported by the fact that Millar has not requested a constructive trust or equitable lien, most likely because particular property or specifically identifiable funds are not at issue. Further, the Court cannot draw a reasonable inference from the operative complaint that Defendants have set aside and preserved the benefits sought. At its most basic, this request fails the "possession test"

underlying *Great-West*, and the Court will not allow a claim for such relief to proceed when it fails to meet this hallmark of restitution as equity.[5]

### C.     Attorneys' Fees

Millar's final argument, although placed at the front of his response brief, is that his request for attorneys' fees under ERISA represents an equitable remedy that will allow the claim to continue forward.

Section 502(g)(1) provides that "[i]n any action under this subchapter . . . by a participant [or] beneficiary . . . , the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (2006). As the statute indicates, a fee award to a prevailing party is discretionary, not mandatory, and is only warranted if the non-prevailing party's litigation position was not "substantially justified." *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 339 (7th Cir. 2004) (citing *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984)).[6] There is a modest but rebuttable presumption that a prevailing party is entitled to

---

[5]The Court notes that Millar does not dedicate more than a line of his brief to the request for restitution of forfeited employee benefits.

[6]Courts have also articulated the following five-factor test:

> 1) [T]he degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions.

*Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998) (pension plan context). However, as the Seventh Circuit Court of Appeals recognized in *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 592-93 (7th Cir. 2000), the five-factor test only facilitates the ultimate inquiry whether the non-prevailing party's position was substantially justified. *Lowe*, 361 F.3d at 339; *see Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 672 (7th Cir. 2007) (questioning whether the five-factor test has "outlived

attorneys' fees. *Stark v. PPM Am., Inc.*, 354 F.3d 666, 673 (7th Cir. 2004).

Here, based on the foregoing, the Court has found that Millar's ERISA claim fails to state any equitable remedy available to him under the statute. In other words, he is not a prevailing party under § 502(g)(1) that would be entitled to attorneys' fees. Even if the Court found that Millar asked for *some* equitable relief under ERISA, Defendants' stance on the issue has been substantially justified thus far, rendering such fees unavailable. It also bears noting that Millar's original Complaint (Doc. 3) sought attorneys' fees, which the Court previously found to be "no way equitable in nature." (Doc. 36, p. 6). Finally, the Court's ruling on this issue makes a great deal of practical sense. Namely, if slapping "attorneys' fees" at the bottom of one's ERISA claim made out an equitable remedy under § 502(a)(3), then an entire body of ERISA case law, some of which has been chronicled above, would be ignored. Millar's citation of *Schmidt v. Ameritank, Inc.*, No. 07-090-WDS, 2008 WL 268719 (S.D. Ill. Jan. 30, 2008), is not binding on this Court and will not dictate a different result. Since attorneys' fees are unavailable to Millar, he has once again failed to pray for appropriate relief under ERISA.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 81) Count IV of Millar's Amended Complaint (Doc. 77), titled "Discharge in Violation of 29 U.S.C. § 540." The Court **DISMISSES** said count **with prejudice**.[7] The Court **DIRECTS** the Clerk of

---

its usefulness" in light of the simpler test of substantial justification).

[7]Dismissal with prejudice is warranted as the Court finds that amendment of the complaint would be futile. Specifically, the Court has already given Millar the opportunity to amend the count for the very reasons at issue in this motion, and Millar has seemingly pled every remedy with a tinge of equitable lineage. As such, the Court has no doubt that "the complaint, [if] amended, would fail to state a claim upon which relief could be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d

Court to enter judgment accordingly at the close of this case.

**IT IS SO ORDERED.**
**DATED: March 30, 2010**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

1074, 1085 (7th Cir. 1997) (citations omitted).